[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried on July 23, 1965 in Mount Vernon, New York. They have resided continuously in this state since their marriage. There are no minor children issue of the marriage.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in §§ 46b-81 and 46b-82 of the Conn. General Statutes in reaching the decisions reflected in the orders that follow.
The parties have been married for 33 years. The one child issue of the marriage is well over the age of 18 years. The CT Page 11895 plaintiff is 51 years of age and in good health. The defendant is 54 years of age and also in good health. Both parties are high school graduates. For the first 23 years of their marriage, the parties lived in homes owned by the plaintiff's father. They payed no living expenses for the first 12 years and thereafter, utilities only for 11 years plus four months of a mortgage.
In the 1920's, the plaintiff's grandfather started the bus company business which was expanded by the plaintiff's father and then the parties. The plaintiff worked for her father in the transportation business as a bookkeeper and, in 1980, the father transferred his interest in the business to the plaintiff.
In 1985, the business terminated the motor coach/charter division and concentrated solely on school bus transportation under the name of the Student Bus Service, Inc. The plaintiff claims she ran this business doing the hiring, firing, scheduling and negotiation for the school bus contracts and company loans. In 1997, this company had gross receipts of approximately $2,721,341.00. The company presently has a five year contract with the Stratford Board of Education.
The defendant worked in the transportation business as a mechanic. He is a master mechanic and he oversaw five mechanics who were responsible for the maintenance of the fleet of buses and motor vehicles. The defendant worked hard in this business for over 30 years. He convinced his cousin (and partner) to sell real estate to the company for its business; he assisted in clearing the land, putting up the building and maintenance of the buses and grounds. He bartered his services as a mechanic to obtain materials and services for the company. He had a good business sense to negotiate for parts and equipment for their fleet of buses.
While the plaintiff did the inside work for the company, the defendant was the outside person.
In 1988, the Stratford Bus Line Inc. transferred the Chestnut Avenue property to a limited partnership, PPT Limited Partnership, with the plaintiff retaining a two-thirds interest and her two sisters retaining a one-third interest.
The defendant testified he was upset over this transfer as he felt he should have been given an interest. However, he continued working in the business until December 1997. Early in his career, CT Page 11896 the defendant became involved in stolen parts. This criminal matter was resolved with the defendant paying a fine. At the present time, the Student Bus Service, Inc. owns 72 motor vehicles, 37 of which are large school buses.
For whatever reason, the plaintiff's father declined to turn over any interest in this business to the defendant but rather turned over this business, started by his father in the twenties, to the plaintiff in 1980.
The defendant, however, was the beneficiary of loans from his father-in-law when he purchased a gas station. The defendant also had his business on the premises called Stratford Truck Auto. As a first rate master mechanic, the defendant has his ability to obtain income; he has an earning capacity and is able to support himself.
Although the parties worked well together in this business during their marriage and were able to maintain a high quality of lifestyle, unfortunately, the defendant had an affair with one of the female bus drivers who became pregnant and the plaintiff and the defendant separated.
Unfortunately, the parties were unable to resolve their marital difficulties. The evidence presented indicates that the greater fault of the cause of the breakdown must be attributed to the defendant.
The martial home is presently solely in the name of the plaintiff. It is on the market for sale with a listing price of $885,000.00.
The plaintiff also receives rental income from PPT, according to her financial affidavit, of approximately $2,576.00 net per month. The plaintiff's financial affidavit indicates a total net income from all sources of approximately $208,800.00 per year.
Both parties had expert appraisers to evaluate the business, Student Bus Service, Inc. Stratford students have been transported by this company and its predecessors for over 50 years. At the present time, this company was the successful bidder for a five year contract which will expire in the year 2003. The previous contract was for one year and the contract prior to that was for six years (all negotiated by the plaintiff). CT Page 11897
There was a wide divergency between the appraisers. The plaintiff's appraiser came in with a figure of $380,000.00. The defendant's appraiser came in with $1.3 million to $1.5 million as the value of this business.
The valuable commodity in this case is, of course, the five year contract with the Stratford Board of Education. Thus, for the next five years, the stream of income of this company can be determined based on the contract figures. At the end of five years, if the plaintiff is not the successful bidder or negotiator and is unable to contract with another district, this company is left with 72 motor vehicles.
There were no comparable sales of similarly situated bus companies. Suffice it to say, it is a lucrative business.
The court next reviews the income of the plaintiff as reported for federal tax purposes. Should not the defendant receive some portion of this income during the life of this contract? Up until his dalliance, the defendant was a faithful and hard worker. The plaintiff's income over the past three years has averaged approximately $375,000.00 plus the rental income from the PPT Limited Partnership.
Whether the company is worth $380,000.00 or $1.3 million, in fact it provides a stream of income to finance an award to the defendant, in addition to providing a substantial income to the plaintiff.
The net income of the company, as projected by the plaintiff's appraiser (based on the present contract), will support an annual award to the defendant.
The defendant's appraiser used several methodologies in his evaluation. Using the discounted future returns method, he arrived at a present value of $738,082.00 (Defendant's Exhibit 7, page 29) plus the estimated remaining value of the vehicles at the end of five years. The court determines that this value is a reasonable and appropriate figure based on the testimony of the appraisers.
There was some testimony that nine years ago the plaintiff wanted to sell the business for $1.9 million. Since that time, the company has amassed a debt of approximately $1.7 million as a result of purchasing new buses. The defendant is not on any of CT Page 11898 the business loans. As a matter of fact, the defendant was never involved in obtaining the bank loans. The plaintiff was in charge and handled all the financial dealings with the bank. The plaintiff was in charge of the family finances. The defendant never looked at the contract with the school board.
The parties agreed that the property located at 70 Chestnut Avenue has a value of $600,000.00. This property is in the name of PPT Limited Partnership in which the plaintiff has a two-thirds interest. The defendant has no interest in this partnership.
The following orders shall enter.
REAL ESTATE
1. The marital home located at 1168 Sport Hill Road, Easton, Connecticut, presently in the name of the plaintiff, shall remain in the plaintiff's name and shall continue to be listed for sale. Upon the sale of said home, the net proceeds shall be equally divided between the plaintiff and the defendant. It shall be the plaintiff's responsibility to secure the removal of the present blanket mortgage on said premises in the principal amount of $1,765,000.00 as reflected in her financial affidavit. Net proceeds means the sales price less first mortgage, real estate commission, attorneys' fees and usual and customary closing costs.
2. The plaintiff shall transfer to the defendant the five units of undeveloped land in Rio Del Oro, New Mexico.
PROPERTY SETTLEMENT
The defendant is awarded a lump sum property settlement in the amount of $350,000.00 payable in installments of $50,000.00 each year commencing December 15, 1998.
PERSONAL PROPERTY
1. The parties filed a stipulated agreement as to a division of their personal property and it is approved and so ordered.
2. The defendant shall be entitled to the ownership of the 1995 Harley Davidson motorcycle and the defendant shall be responsible for the balance due on said motorcycle loan and shall hold the plaintiff harmless from any liability thereon. CT Page 11899
ALIMONY
Neither party is awarded periodic alimony.
COUNSEL FEES
Each of the parties shall be responsible for their respective attorney's fees and appraiser's fees.
MISCELLANEOUS
1. Each party shall be entitled to their respective IRAs, annuities and retirement accounts.
2. The plaintiff shall hold the defendant harmless with respect to the loan claimed to be due and owing by the defendant's company, Stratford Truck Auto Repair Co., the Student Bus Co., or to the plaintiff, as set forth in the plaintiff's affidavit in the amount of $119,071.00.
LIFE INSURANCE
The defendant shall be named as a beneficiary on the plaintiff's life insurance in an amount of $350,000.00 for so long as the defendant is entitled to any payments as set forth herein. This provision shall be modifiable as to amount and duration.
Coppeto, J.